**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-1093 DOC (MLGx)                        Date: April 19, 2011

Title: JUSTIN SIEMONSMA AND BERNADINE BACHELOR v. MUTUAL DIVERSIFIED EMPLOYEES FEDERAL CREDIT UNION, ET AL

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                             NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NATIONAL CREDIT UNION ADMINISTRATION BOARD'S MOTION TO DISMISS

        Before the Court is Defendant Mutual Diversified Employees Federal Credit Union ("Credit Union")'s, acting through Liquidating Agent National Credit Union Administration Board ("NCUA"), Motion to Dismiss ("Motion") the First, Second, Third, Fourth, and Sixth Causes of Action (Docket 21). The Court finds this matter appropriate for decision without oral argument. Fed.R.Civ. P. 78; Local Rule 7-15. After considering the moving, opposing, and replying papers, the Court hereby GRANTS IN PART AND DENIES IN PART the Motion and grants LEAVE TO AMEND.

        **I.**      **Background**

        Plaintiff Bernadine Bachelor ("Bachelor") is an elderly woman who suffers from Alzeimers Disease. Over a period of years, Bachelor invested money in various accounts at Credit Union through which she established a joint account with her grandson, Plaintiff Justin Siemonsma ("Siemonsma"). Bachelor deposited $10,000 a year into the account for Siemonsma. She also requested that Siemonsma help her in managing her accounts at Credit Union, given her worsening condition.

        According to Plaintiff's Complaint, Defendant Mary Carmen Hartley ("Hartley"), the only

employee of Credit Union**,** exploited her relationship with Bachelor to close her account and to take the money for Hartley's own personal use. Upon learning that his grandmother's account had reached a $0 balance and demanding that the money he knew should have been in the account be returned, Credit Union's attorney informed Siemonsma that Hartley had indeed embezzled the money from Bachelor. The First Amended Complaint ("FAC") alleges that Hartley and Credit Union stole both Plaintiffs' money, committed elder abuse and fraud, and are liable for damages.

On November 8, 2010, the Court granted NCUA's Motion to Dismiss with leave to amend due to Plaintiffs' failure to exhaust their administrative remedies or, alternatively, to allege sufficient justifications for their failure to exhaust. On December 20, 2010, Plaintiffs filed their FAC. The NCUA brings the present Motion as the Liquidating Agent for defendant Credit Union following the Credit Union's liquidation.

## II. Legal Standard

### 1. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the Court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the Court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### 2. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks and citation omitted). The Ninth Circuit has defined "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citation omitted), *rev'd on other*

*grounds*, 510 U.S. 517, 114 S. Ct. 1023 (1994).

### III. Discussion

NCUA concedes that Plaintiffs stated a sufficient claim for their Seventh, Eighth, and Ninth causes of action, but insist that they have failed to state a claim for their First, Second, Third, Fourth, and Sixth causes of action. The Court addresses each of these in the order raised by NCUA, but first raises the dispositive issue for many claims about whether a fiduciary relationship existed between the Credit Union and Bachelor.

#### 1. Fiduciary Relationship

A large portion of NCUA's Motion stems from its argument that the relationship between the Credit Union and Bachelor was that of a debtor and creditor. Motion, 4. That relationship, NCUA insists, is not a fiduciary one, as a credit union is akin to a bank. *Id.* Plaintiffs respond by distinguishing banks from credit unions, pointing to the contract formed between credit union members and the credit union, and arguing that the privileges and benefits afforded to credit union members resemble a shareholder relationship. Plaintiffs' Opposition ("Opposition"), 4-5.

Relationships between a lender and a borrower are not typically treated as fiduciary relationships. "The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App. 3d 1089, 1093 n.1 (1991). Nonetheless, Californoa courts use a balancing test to determine whether a duty exists between a lender and a borrower. *See Watkinson v. MortgageIT, Inc.*, 2010 WL 2196083, *8 (S.D. Cal. 2010). The test balances the following factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.'" *Id.* (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal.2d 850, 865, 73 Cal.Rptr. 369, 447 P.2d 609 (1968) (quoting Biakanja v. Irving, 49 Cal.2d 647, 650, 320 P.2d 16 (1958))).

Indeed, Plaintiffs fail to supply any legal authority suggesting that credit unions differ than banks in regards to their legal relationship or, more specifically, that credit unions' relationships with their members are fiduciary ones. Moreover, the Court has been unable to find any authority indicating that the role of credit unions and their members differ significantly from a bank's relationship with its customer. Nor do Plaintiffs offer the Court any evidence through which it can weigh the factors necessary to complete the balancing test. Thus, the Court declines to find a fiduciary relationship simply due to defendant's status as a credit union.

Plaintiffs alternatively argue that a fiduciary relationship can be inferred from the

existence of a confidential relationship. Opposition, 5. Indeed, a confidential relationship gives rise to a fiduciary duty, and there may be a confidential relationship even "where there is no fiduciary relation." *See Perrson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1160 (2005). As a result, confidential relationships are "more difficult to identify than fiduciary relations," as they must be evaluated based on context. *See Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257 (2003). Plaintiffs have alleged that Hartley "gave special investment advice to plaintiff, that she induced Plaintiff [Bachelor] to trust her with recommendations of financial affairs, and that defendant knew plaintiff's mental faculties were diminished because of her age." Plaintiffs argue that these allegations sufficiently establish that plaintiffs "put their trust and repose in defendant," thereby creating a confidential relationship. *Id.* However, once again, Plaintiffs fail to support adequately their assertion that their allegations suggest a confidential relationship, merely pointing to inapposite cases, dealing with the duties owed between spouses and other distinguishable types of relationships. Plaintiffs' allegations are too conclusory to establish a confidential relationship stemming simply from depositing funds into a credit union. *See* FAC, ¶ 77 ("By virtue of the relationship between plaintiffs and defendants, and each of them, a fiduciary duty existed.")

Furthermore, where California courts have found confidential relationships, there have been stronger bonds between the parties. *See, e.g.*, *Goldberg v. Goldberg*, 217 Cal. App. 2d 623, 630 (1963) (noting that a confidential relationship is especially likely to be found "where there is a family relationship or one of friendship or such a relation of confidence as that which arises between physician and patient or priest and penitent"). To find a confidential relationship arising out of the mere depositing of funds would make confidential relationships ubiquitous in the lending industry, which strikes the Court as contrary to the meaning of a confidential relationship.

Accordingly, the Court finds that Plaintiffs have not sufficiently alleged a fiduciary duty owed to them by the Credit Union.

### 2. Causes of Action in the FAC

#### A. Strict Liability in Tort (Fourth Cause of Action)

Plaintiffs allege that the Credit Union breached its fiduciary duty to Plaintiffs and is therefore strictly liable for Plaintiffs' damages. FAC, ¶¶ 83-84. As the Court has described above, the FAC fails to allege adequately a legal fiduciary relationship. Furthermore, as NCUA argues, Plaintiffs have failed to articulate any theory for strict liability in tort, such as a theory of product liability, a relevant statutory scheme, or involvement in an ultra-hazardous activity. *See, e.g.*, *Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333 (1985) (evaluating a theory of strict liability applied to ultra-hazardous activity); *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57 (1963) (examining a theory of strict liability in tort for a products liability case).

Thus, the Court GRANTS NCUA's Motion to dismiss this cause of action for failure to

state a claim.

### B.     Conversion (Sixth Cause of Action)

A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. *McKell v. Washington Mut., Inc.*, 142 Cal. App.4th 1457, 1491 (2006). Plaintiffs allege as part of their conversion claim that Hartley "intentionally took possession of cash assets owned by [Bachelor] and Justin and/or converted cash assets owned by [Bachelor] and Justin into personal and real property for her own use and not for the use of [Bachelor] and Justin." FAC ¶ 98. Yet they fail to allege the elements of conversion as they apply to the Credit Union. Indeed, NCUA argues that conversion cannot, as a matter of law, be alleged on the basis of a debtor-creditor relationship alone. *See Watson v. Stockton Morris Plan Co.*, 34 Cal. App. 3d 393, 403 (1939) ("'It has been held, as a general rule, that, where the relationship of debtor and creditor only exists, conversion of the funds representing the indebtedness will not lie against the debtor, unless he holds the deposit in a fiduciary capacity and is bound to return to the owner the identical money.'") (citations omitted). Furthermore, given that the Court discussed above that the relationship at issue here was akin to that of a depositor and a bank, it is clear that, like a bank, the Credit Union cannot be charged with converting the deposit to its own use since title of the funds immediately passed to the credit union upon deposit. *See Lee v. Bank of America*, 218 Cal. App. 3d 914, 919 (1990). Plaintiffs do not allege that the Credit Union funding operated differently–such as in the form of a special deposit--and their Opposition fails to respond to this argument by NCUA.

Accordingly, the Court GRANTS NCUA's Motion to Dismiss this claim.

### C.     Constructive Fraud (Third Cause of Action) and Fraud (Second Cause of Action)

Constructive fraud is a breach of duty that occurs when a party does not intend to be fraudulent but nonetheless "gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice." Cal. Civ. Code § 1573. As the Court discussed above, Plaintiffs' reliance on a theory of a fiduciary relationship, *see* FAC, ¶ ¶ 76-77, in support of this claim must fail**,** as no such fiduciary relationship exists. NCUA further argues that Plaintiffs failed to state any misrepresentations that the Credit Union, as opposed to Hartley, made. Plaintiffs insist that they did allege that the Credit Union provided false statement, as they provided Bachelor with a false statement indicating a zero balance. *See* FAC ¶ 23. However, Plaintiffs fail to tie that to constructive fraud. Indeed, the statement *correctly* showed a zero balance due to Hartley's alleged actions; the fact that the statements did not reveal the source of the zero balance is not a misrepresentation. Furthermore, as NCUA describes in great depth, it is not clear how that representation of no balance gave the Credit Union any advantage or that there was any detrimental reliance based on these representations. This claim is therefore not fleshed out enough to state a claim.

Plaintiffs' allegation of fraud states that Hartley acted on behalf of the Credit Union to represent that Bachelor had closed the joint bank account, that the representation was made for purposes of covering up Hartley's actions. Unlike the constructive fraud allegation, here, Plaintiffs sufficiently allege a detrimental reliance, as well as damages. *See* FAC ¶¶ 64, 73. NCUA, however, convincingly argues that because Plaintiffs had no right to demand payment on the debt and did not have title to the funds, there was no harm given that Plaintiffs could still request their funds. As the Court discussed above, title of the funds immediately passed to the credit union upon deposit. *See Lee v. Bank of America*, 218 Cal. App. 3d 914, 919 (1990).

As a result, the Court GRANTS NCUA's Motion as to constructive fraud and fraud.

### E. Fiduciary Abuse and Elder Abuse (First Cause of Action)

As the Court has repeated throughout this Order, Plaintiffs have failed to allege adequately the existence of a fiduciary relationship, which implicates Plaintiffs' allegations of fiduciary abuse. Furthermore, Plaintiffs cite California Welfare & Institutions Code section 15610(f) in support of this claim–a section that does not exist. Their allegations of fiduciary abuse therefore fail to state a claim.

Under California law, an "elder" is "any person residing in this state, 65 years of age or older." Cal. Welfare & Inst. Code § 15610.27. Financial abuse of an elder is defined by Section 15610.30 as doing any of the following: 1) taking, secreting, appropriating, or retaining real or personal property of an elder to a wrongful use or with intent to defraud, or both; and 2) assisting in doing the same. Cal. Welfare & Inst. Code § 15610.30. A person will be deemed to have committed elder abuse if he takes, secrets, appropriates or retains the property in "bad faith," where bad faith is defined as knowing or having reason to know that the elder had the right to the property. *Id*.

Plaintiffs have alleged that Bachelor was an elder under the Code, FAC ¶ 34, and that Hartley coerced her into transferring funds, with which Hartley then absconded. *Id.* at ¶ 39. Finally, Plaintiffs alleged that the Credit Union "knew or should have known of Hartley's actions . . . ." *Id.* Nonetheless, Plaintiffs are also required to allege "physical harm or pain or mental suffering" to support a claim for financial elder abuse, which they have not directly alleged. *See* Cal. Welfare & Inst. Code § 15610.07.

Accordingly, NCUA's Motion is GRANTED.

### 3. Damages

NCUA also asks the Court to strike from the prayer of the FAC paragraphs 1, 4, 5, 6, 7, 8, 9, and 11, all of which relate to damages. Most of these requests are premature and will depend on

factual issues to be established. Furthermore, given that NCUA had a typo in its original Motion, which it corrected through a Notice of Errata only a day before the Opposition brief was due, Plaintiffs were unable to respond appropriately, as they believed the NCUA was raising the incorrect statutory citation, which they noted. *See* Opposition, 8. As a result, the Court defers ruling on striking these prayers. The NCUA is free to raise these issues again at a further date. At the present time, however, the Court DENIES this portion of the Motion.

### 4. Motion to Strike

Finally, the NCUA requests that the Court strike Paragraph 5 of the FAC, which alleges that the NCUA is a defendant to this case. As NCUA points out, none of the causes of action are brought against the NCUA and it is not a named defendant. Furthermore, Plaintiffs' Opposition does not object to this request.

Accordingly, the Court GRANTS the Motion to strike, finding that paragraph 5's reference to the NCUA as a defendant has "no possible relation to the controversy and may cause prejudice" to it. *Friedman*, 580 F. Supp. 2d at 990 (internal quotation marks and citation omitted).

### IV. Disposition

For the reasons stated above, the Court GRANTS WITH LEAVE TO AMEND the NCUA's Motion to Dismiss as to Plaintiffs' claims for Strict Liability in Tort; Conversion; Constructive Fraud; and Fiduciary and Elder Abuse, and also GRANTS the NCUA's Motion to Strike Paragraph 5. The Court DENIES the NCUA's Motion to dismiss the claim of Fraud and the Motion to strike from the prayer of the FAC paragraphs 1, 4, 5, 6, 7, 8, 9, and 11.

Plaintiffs shall have two weeks from the date of this Order to amend their complaint.

The Clerk shall serve this minute order on all parties to the action.